JUDGE FORREST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 2598

------------------------------------------------------------X  Case No.

DIANTHA MASON,

**COMPLAINT**

Plaintiff,

-against-

NEW YORK RESTORATION PROJECT,
DONTE TAYLOR, *Individually*,
SIMON SKINNER, *Individually*, and
CATHERINE HALL, *Individually*,

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Defendants.
------------------------------------------------------------X

*RECEIVED APR 19 2013 U.S.D.C. S.D.N.Y. CASHIERS*

Plaintiff DIANTHA MASON, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII") and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et. seq.*, and seeks damages to redress the injuries she has suffered as a result of being **Sexually Harassed, Discriminated Against on the Basis of Gender**, and **Retaliated Against** by her employer.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon Defendants' principal place of business within the Southern District of New York.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated April 12, 2013, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8. That at all times relevant hereto, Plaintiff DIANTHA MASON ("MASON") was a resident of the State of New York and the County of New York.

9. That at all times relevant hereto, Defendant NEW YORK RESTORATION PROJECT ("NYRP") was a domestic not-for-profit corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 254 West 31st Street, 10th Floor, New York, New York 10001.

10. Defendant NYRP is the private partner in Mayor Bloomberg's MillionTreesNYC campaign to plant one million new trees in New York City by 2017.

11. That at all times relevant hereto, Plaintiff MASON was an employee of Defendant NYRP.

12. That at all times relevant hereto, Defendant DONTE TAYLOR ("TAYLOR") was an employee of Defendant NYRP, holding the position of "Manhattan Regional Manager."

2

13. That at all times relevant hereto, Defendant TAYLOR was Plaintiff MASON's supervisor and had supervisory authority over Plaintiff MASON.

14. That at all times relevant hereto, Defendant SIMON SKINNER ("SKINNER") was an employee of Defendant NYRP, holding the position of "Director of Operations."

15. That at all times relevant hereto, Defendant SKINNER was Plaintiff MASON's supervisor and had supervisory authority over Plaintiff MASON.

16. That at all times relevant hereto, Defendant CATHERINE HALL ("HALL") was an employee of Defendant NYRP, holding the position of "Senior Vice President and Chief Operating Officer."

17. That at all times relevant hereto, Defendant HALL was Plaintiff MASON's supervisor and had supervisory authority over Plaintiff MASON.

18. That at all times relevant hereto, Defendant NYRP, Defendant TAYLOR, Defendant SKINNER, and Defendant HALL are collectively referred to herein as "Defendants."

## MATERIAL FACTS

19. On or about May 25, 2012, Plaintiff MASON began working for Defendants as a "Garden Worker" in Highbridge Park located in Washington Heights, earning approximately $9.00 per hour.

20. Plaintiff MASON was hired as part of Defendant NYRP's AmeriCorps program, which affords participants a tangible means by which to both give back to the environment and New York City, while earning credit towards incurred or impending educational expenses. Defendant NYRP's AmeriCorps members are involved in all aspects of Defendant NYRP's work – cleaning and maintaining public parkland and Defendant

3

NYRP-owned community gardens throughout New York City.

21. In or about August 2012, Plaintiff MASON was transferred to a different location due to her allergic reaction to certain trees and plants, where **Plaintiff MASON's new direct supervisors were Barry Elmore (employee of Defendant NYRP) and Julio Dolmus (an employee of AmeriCorps).**

22. At all times relevant hereto, Plaintiff MASON was an exemplary employee, was never disciplined, and always received compliments for her work performance.

23. However, beginning in or about August 2012, **Plaintiff MASON was also constantly and continuously sexually harassed by her supervisors solely due to Plaintiff MASON's gender (female)**, creating an extremely hostile and intimidating work environment.

24. By way of example, in or about August 2012, on Plaintiff MASON's first day at her new location, Julio Dolmus told her, **"I am a tit man and Barry [Elmore] is an ass man."** While Plaintiff MASON was extremely uncomfortable by this comment, she was hoping it was just a one-time occurrence. Unfortunately, she was wrong.

25. In or about August 2012, one of the Americorp members approached Plaintiff MASON and asked her, **"Do you wear a butt pad? Barry [Elmore] asked me to look inside the locker room to see if you wore one. Barry [Elmore] wants to know real bad."** Plaintiff MASON was humiliated and embarrassed and simply responded, "no."

26. In or about August 2012, while Barry Elmore and Plaintiff MASON were driving to one of the Manhattan gardens, Barry Elmore actually asked Plaintiff MASON if she wore a butt pad. Plaintiff MASON said "hell no" and asked him to stop asking inappropriate questions, to which Barry Elmore responded, **"I only wanted to know because your ass**

4

be looking real nice." Plaintiff MASON was so embarrassed and felt so belittled by her supervisor's sexually harassing actions and remarks.

27. Shockingly, Barry Elmore then had the audacity to ask Plaintiff MASON, **"Can I see it or touch it without any clothes because I don't believe you?"**

28. In or about September 2012, while Barry Elmore and Plaintiff MASON were working in one of the Manhattan gardens, **Barry Elmore suddenly asked Plaintiff MASON if she ever had a threesome**, to which Plaintiff MASON responded, "No and I'm not interested in having one."

29. Quite disgracefully, Barry Elmore then started telling Plaintiff MASON that he had a threesome with his brother and a girl, and that she enjoyed him more because "he was bigger and better than his brother down there." Plaintiff MASON was utterly embarrassed and humiliated by her supervisor's continuous sexual harassment and improper comments.

30. As such, in or about September 2012, **Plaintiff MASON complained to Defendant TAYLOR** about all of Barry Elmore's sexual harassment. In response, Defendant TAYLOR said that he would address the situation.

31. In addition, Plaintiff MASON told Defendant TAYLOR that she also wanted to complain to Defendant SKINNER and asked Defendant TAYLOR if he could tell Defendant SKINNER that Plaintiff MASON wanted to speak with him about the sexual harassment.

32. Unfortunately, Defendant TAYLOR took absolutely no action in response to Plaintiff MASON's complaint, and Barry Elmore nonetheless continued sexually harassing Plaintiff MASON.

33. In or about October 2012, while they were again in the truck together, after Plaintiff

5

MASON's phone rang several times, Barry Elmore said, "he keeps calling because you have on those sweatpants and **that ass looking nice.**" Plaintiff MASON made it clear that she was physically repulsed and disgusted by the unrelenting sexual harassment.

34. Accordingly, in or about October 2012, **Plaintiff MASON complained once again to Defendant TAYLOR** about Barry Elmore's continued sexual harassment. However, once again, Defendant TAYLOR took no action, allowing Plaintiff MASON's supervisors to continue with their sexual harassment.

35. For example, in or about October 2012, Plaintiff MASON, Barry Elmore, and Julio Dolmus were listening to the radio and at the end of the song, as he was looking directly at Plaintiff MASON, Julio Dolmus made up his own verse and said **"don't you like being raped."** Plaintiff MASON asked Julio Dolmus why he would say something like that, to which Julio Dolmus responded, **"some women are into role play."** Plaintiff MASON was so distraught at this point that she said, "I'm not into that kind of shit. People get raped every day and I don't find that funny."

36. Later that same day, in or about October 2012, when Julio Dolmus noticed that Plaintiff MASON's shirt was ripped, he told her, **"you like it rough,"** inferring that her shirt was ripped during rough sex. Barry Elmore was laughing at the comment and turned up the music.

37. The following day, in or about October 2012, **Plaintiff MASON complained yet again to Defendant TAYLOR** about Julio Dolmus's unlawful and sexually harassing comments.

38. This time, Defendant TAYLOR even met with Barry Elmore, Julio Dolmus, and Plaintiff MASON during which Julio Dolmus actually admitted that he made those sexually

6

harassing remarks to Plaintiff MASON. However, because Defendant TAYLOR did nothing about it, Barry Elmore and Julio Dolmus nonetheless continued with their unlawful actions.

39. As such, in or about November 2012, **Plaintiff MASON was finally able to complain to both Defendant SKINNER** and Yessiana Santiago, Assistant Director of Operations, about all of Barry Elmore's and Julio Dolmus's constant sexual harassment and retaliation.

40. The following day, **Plaintiff MASON personally met with Defendant SKINNER and Defendant HALL** during which Plaintiff MASON explained all the sexual harassment to which she was subjected.

41. Soon after, Defendants transferred Plaintiff MASON to a different location in the Bronx.

42. However, Barry Elmore and Julio Dolmus would nonetheless still go to Plaintiff MASON's new location and **give her dirty looks for the sole purpose of scaring and intimidating Plaintiff MASON**.

43. It was at this time that it became crystal clear to Plaintiff MASON that Defendants were now going to allow Barry Elmore and Julio Dolmus to retaliate against and intimidate Plaintiff MASON.

44. As such, in or about November 2012, due to the unrelenting sexual harassment and retaliation, Plaintiff MASON felt she had no choice but to resign from her position.

45. Plaintiff MASON felt that any ordinary person in her shoes would have felt compelled to resign from her employment.

46. **As a result of the patently and brazenly illegal behavior described herein, Plaintiff MASON was thus constructively discharged from her employment effective in or**

**about November 2012.**

47. Plaintiff MASON continually objected to her supervisors' sexual harassment to no avail.

48. Plaintiff MASON was subjected to such a discriminatory, hostile and abusive work environment that no reasonable person in Plaintiff MASON's shoes should or could be expected to endure.

49. Plaintiff MASON was humiliated on continual basis by the aforementioned discriminatory conduct and comments by Defendants.

50. Plaintiff MASON felt offended, disturbed, and humiliated by the illegal sexual harassment, discrimination and retaliation.

51. Defendants created a hostile working environment, which unreasonably interfered with Plaintiff MASON's work environment.

52. Plaintiff MASON began to suffer severe anxiety and depression as a result of Defendants' sexual harassment, discrimination, and retaliation.

53. **Plaintiff MASON was sexually harassed by her supervisors, Barry Elmore and Julio Dolmus, solely due to Plaintiff MASON's gender (female).**

54. But for the fact that Plaintiff MASON was female, Plaintiff MASON's supervisors would not have treated her differently and would not have sexually harassed her.

55. But for the fact that Plaintiff MASON complained of sexual harassment, Plaintiff MASON's supervisors would not have retaliated against her.

56. Defendants' actions were unsolicited, unwelcome and offensive.

57. Plaintiff MASON was unlawfully sexually harassed, discriminated against, retaliated against, humiliated, degraded, and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, earnings and physical injury.

58. Defendants' actions and conduct were intentional and intended to harm Plaintiff MASON.

59. Barry Elmore and Julio Dolmus took advantage of the situation and the power they held over Plaintiff MASON by intentionally discriminating against her, sexually harassing her, and retaliating against her.

60. The above are just some of the acts of sexual harassment, discrimination, and retaliation that Plaintiff MASON experienced on a regular and continual basis while employed by Defendants.

61. Plaintiff MASON's performance was, upon information and belief, above average during the course of her employment with Defendants.

62. As a result of Defendants' actions, Plaintiff MASON feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

63. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff MASON, Plaintiff MASON has suffered severe emotional distress and physical ailments.

64. As a result of the acts and conduct complained of herein, Plaintiff MASON has suffered from emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff MASON has further experienced severe emotional and physical distress.

65. As a result of the above, Plaintiff MASON has been damaged in an amount which exceeds the jurisdiction limits of the Court.

66. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff MASON demands Punitive Damages as against both Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment).

69. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her gender (sexual harassment).

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

72. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et

10

seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

73. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74. The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

75. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender (sexual harassment).

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

76. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. The New York City Administrative Code §8-107(6) provides that it shall be unlawful

discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

78. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

81. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. New York City Administrative Code §8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any

other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

84. Defendants violated the section cited herein as set forth.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86. New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      1. the employee or agent exercised managerial or supervisory responsibility; or

      2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

      3.    the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

  c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

87.    Defendants violated the section cited herein as set forth.

## JURY DEMAND

88.    Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by <u>Title VII of the Civil Rights Act of 1964</u>, as amended, 42 U.S.C. §2000e *et. seq.* and the <u>New York City Administrative Code</u>, §8-107 *et. seq.*, in that Defendants <u>sexually harassed</u> Plaintiff and <u>retaliated against</u> Plaintiff for objecting to, and complaining about, Defendants' sexual harassment;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful sexual harassment, discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

14

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
April 18, 2013

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: _____
Alex Umansky, Esq.
*Attorneys for Plaintiff*
30 Broad Street, 35th Floor
New York, New York 10004
(212) 248-7431
aumansky@tpglaws.com